# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Dawn Strope-Robinson,                                    Civil No. 18-2454 (DWF/LIB)

                 Plaintiff,

v.                                                       **MEMORANDUM
                                                         OPINION AND ORDER**

State Farm Fire and Casualty
Company,

                 Defendant.

---

Richard A. Dahl, Esq., Prebich Law Office, counsel for Plaintiff.

Joseph A. Lulic, Esq., Brownson Norby, PLLC, counsel for Defendant.

---

## INTRODUCTION

This matter is before the Court on cross motions for summary judgment brought by Plaintiffs Dawn Strope-Robinson ("Strope-Robinson") and the Estate of David Clair Strope (the "Estate") (together, "Plaintiffs") (Doc. No. [39]) and Defendant State Farm Fire and Casualty Company ("State Farm") (Doc. No. [34]). For the reasons set forth below, the Court grants State Farm's motion and denies Plaintiffs' motion.

# BACKGROUND

The following facts of this case are undisputed. David Strope ("Strope") was the owner of a house and parcel of land (the "Property") located in Orr, Minnesota.[1] (Doc. No. 11. ("Am. Compl.") ¶ 7.) On August 10, 2017, Strope, who was dying of leukemia, executed a transfer on death deed ("TODD") conveying the Property to his niece, plaintiff Dawn Strope-Robinson ("Strope-Robinson"), upon his death. (Am. Compl. ¶ 9; Doc. No. 37 ("Lulic Aff."), Ex. 4 ("Strope TODD") at 3-4.) The Strope TODD was recorded on August 11, 2017. (Am. Compl. ¶ 9.) Strope died soon thereafter, on August 14, 2017.[2] (Lulic Aff., Ex. 1 ("Certificate of Death").)

Before his death, Strope married, then divorced, Denise Lehti ("Lehti"). (Am. Compl. ¶ 11.) On or about August 20, 2017, Lehti intentionally burned down the house located on the Property, destroying the home and the personal property inside.[3] (*Id.* ¶¶ 11-12, 21.)

---

[1] Specifically, Decedent owned St. Louis County Parcel Number 425-0030-00698. (Am. Compl. ¶ 7.)

[2] Strope-Robinsons's Amended Complaint states that Strope died on August 14, 2018, but this seems to be an error and she has not contested the fact that Strope died in August 2017. (*See* Am. Comp. ¶ 10.)

[3] The events surrounding the arson are not clearly described in the Amended Complaint (*see, e.g.,* Am. Compl. ¶ 11 (stating that Lehti burned down the house on the Property "on or about August 20, 2017"); *id.* ¶ 12 (stating that neighbors saw Lehti with containers of gasoline on the Property on August 21, 2017 "as the home on the [Property] burned")), but the parties do not dispute the fact that the house and Strope's personal belongings were damaged as a result of an act of arson by Lehti that took place after Strope's death. At oral arguments held on November 1, 2019, State Farm agreed that while the estimate for rebuilding the house listed "moderate damage" (Doc. No. 42-2, Ex. L), the house was a total loss. (Doc. No. 56 ("Motions Hearing.)

Strope was a named insured on a homeowner's insurance policy issued by State Farm which was in effect from June 3, 2017 to June 3, 2018 and covered fire loss and damage to the Property.  (Am. Compl. ¶ 8; Doc. No. 42-2 ("Dahl Aff. 3"), Ex. K (the "Policy").)  Strope paid a premium of $1,580.00 for the year, an amount that State Farm charged based in part on "information from consumer reports" State Farm used to determine the insurance risk, such as Strope's number of adverse public records and credit accounts carrying a balance, as well as the coverages and limitations he chose and the "likelihood of future claims."  (Policy at 5-7.)  This rate also reflected discounts State Farm gave based on Strope's history as a customer.  (*Id.* at 5, 11.)

The Policy defines those who are "insured" as the named insured and residents of the household who are relatives of the named insured or persons who are under age 21 and in the care of the named insured or covered resident relatives.  (*Id.* at 17.)  Section II, "Your Liability," states that "[i]f any person shown in the Declarations or the spouse, if a resident of the same household, dies," State Farm insures "the legal representative of the deceased . . . with respect to the premises and property of the deceased covered under this policy at the time of death." (*Id.* at 36.)  The same subsection goes on to reiterate that "insured" includes household members who are insured and reside in the premises at the time of the named insured's death or who have "proper temporary custody" of the covered property until a legal representative is appointed.  (*Id.*)  Section I of the Policy, entitled "Your Property," states that "[e]ven if more than one person has an insurable interest in the property covered, [State Farm] shall not be liable . . . to the insured for an amount greater than the insured's interest."  (*Id.* at 29.)  The Policy also provides that

assignment "shall not be valid unless [State Farm] gives [its] written consent." (*Id.* at 36.) The insured may cancel the Policy at any time by notifying State Farm in writing of the date cancellation is to take effect, but State Farm may waive the written notice requirement by confirming the date and time of cancellation in a writing to the insured. (*Id.* at 35.) The Policy states that when it is cancelled, "the premium for the period from the date of cancellation to the expiration date will be refunded" according to State Farm's rules for such cancellation, which "may be less than a full pro rata refund." (*Id.* at 36.)

Strope-Robinson was appointed Special Administrator of the Estate on October 24, 2017 and the Estate's Personal Representative on September 17, 2018. (Am. Compl. ¶19.) Following its investigation of the fire, State Farm denied timely filed claims by Strope-Robinson for coverage of loss to the dwelling on the Property as well as for loss of use for the fair rental value of the house. (*Id.* ¶ 22; Dahl Aff. 3, Ex. L ("Denial Letter") at 21.) State Farm stated that because the Strope TODD transferred title of the dwelling to Strope-Robinson before the fire occurred, meaning that she was the owner of the Property, so "there was no named insured with an interest in the dwelling." (Denial Letter at 21.) State Farm accepted the Estate's claim for the loss of personal property in the fire and enclosed a check payable to the Estate for $27,713.28, the covered amount. (*Id.* at 21-22; Am. Compl. ¶¶ 20-21.)

Strope-Robinson commenced this action against State Farm in state court on August 16, 2018. (Doc. No. 1.) State Farm removed the action to the District of Minnesota on August 22, 2018, pursuant to the Court's jurisdiction under 28 U.S.C. § 1332. (*Id.* ¶ 5.) Strope-Robinson, and in the alternative, the Estate, assert a claim

against State Farm under the Minnesota Uniform Declaratory Judgment Act, Minn. Stat. § 555.01, *et seq.* and pursuant to Minnesota state law governing insurance companies, seeking a declaratory judgment that State Farm has a duty to provide coverage based upon "contract, equity, or statute" and awarding damages for the loss to the Property. (Am. Compl. at 5, 7.)  Strope-Robinson contends that Strope had a reasonable expectation that after his death, the Estate "and/or his successor in interest" would have insurance coverage under the Policy for "a reasonable period of time."  (*Id.* ¶ 24.) Strope-Robinson argues that she "did not have the benefits of ownership" under Minnesota law until after August 28, 2017, when she filed documents required to clear the title, and until that point, State Farm should have either considered her to be the successor in interest to the Policy for the house "as much as [the Estate] was the successor [to the Policy] for the purposes of the personal property claim" or, in the alternative, considered the Estate to be a successor in interest to the Policy for both the house and personal property.  (*Id.* ¶¶ 25-26.)

Strope-Robinson further contends that State Farm is estopped from denying coverage to her or the Estate because State Farm did not return the unused premium for the period through June 3, 2018 or notify Strope-Robinson or the Estate that it was terminating the Policy, which led them to rely upon the Policy "to their detriment."[4]  (*Id.* ¶¶ 27-28.)

---

[4]     Strope-Robinson has not expressly averred that she, on behalf of herself or the Estate, ever requested a cancellation of the Policy.  For its part, State Farm admits that it did not return any part of the premium paid for the Policy but denies that any part of the premium was "unused."  (Doc. No. 42, ("Dahl Aff. 1"), Ex. H at 25.)

State Farm counters that it denied the claims for loss to the structure on the Property based on the fact that Strope-Robinson was not an insured on the Policy and, because the title for the Property transferred to her before the fire, the Estate had no insurable interest in it for State Farm to insure. (Doc. No. 36 ("Def. Mem.") at 1.) State Farm also argues that Strope-Robinson misconstrues the purpose and operation of a TODD under Minnesota law. (Def. Mem. at 2.) Further, State Farm argues that the Policy is a contract for the parties, not the subject property, and that State Farm never entered an agreement to provide coverage for Strope-Robinson, meaning that State Farm is under no obligation to pay for damages to her property. (*Id.*)

## DISCUSSION

### I.     Legal Standards

#### A.     Summary judgment

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Weitz Co. v. Lloyd's of London*, 574 F.3d 885, 892 (8th Cir. 2009). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

This Court will consider the cross-motions drawing inferences against each movant as warranted. *See, e.g., Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## B. State law controls

Because this case is before the Court based on diversity jurisdiction, Minnesota's substantive law controls the analysis. *Kozlov v. Associated Wholesale Grocers, Inc.*, 818 F.3d 380, 388 (8th Cir. 2016); *Babinski v. Am. Family Ins. Grp.*, 569 F.3d 349, 351–52 (8th Cir. 2009). With respect to Minnesota state law, a district court is bound by the decisions of the Minnesota Supreme Court. *Qwest Corp. v. City of Des Moines, Iowa*, 896 F.3d 843, 845 (8th Cir. 2018).

Where there is no Supreme Court opinion directly on point, a district court may consider relevant state precedent, analogous decisions, considered dicta, and any other reliable data in order to determine how the state's highest court would decide. *Qwest Corp. v. Des Moines*, 896 F.3d at 845. When a state's high court has not decided an issue, it is "a well-recognized rule that federal courts may not reject a state court of

appeals decision" solely for that reason, and where the appeals court "rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Wong v. Wells Fargo Bank N.A.*, 789 F.3d 889, 897 (8th Cir. 2015) (quoting *West v. Am. Tel & Tel. Co.*, 311 U.S. 223, 237 (1940)).

## II.    Minnesota Insurance Law

### A.    The Policy

The parties agree that Minnesota law applies in this case.  Under Minnesota law, interpretation of an insurance policy is a question of law.  *Travelers Indem. Co. v. Bloomington Steel & Supply Co.*, 718 N.W.2d 888, 894 (Minn. 2006).  Interpretation of insurance contracts follows "the general rules of contract law, giving terms their plain and ordinary meaning to honor the intent of the parties." *Econ. Premier Assur. Co. v. W. Nat. Mut. Ins. Co.*, 839 N.W.2d 749, 752 (Minn. Ct. App. 2013).

Whether the language of an insurance policy is ambiguous is also a question of law.  *Columbia Heights Motors, Inc. v. Allstate Ins. Co.*, 275 N.W.2d 32, 34 (Minn. 1979).  "If the language of the policy is reasonably subject to more than one interpretation, there is ambiguity.  If it is not reasonably subject to more than one interpretation, there is no ambiguity." *Id.*  Ambiguities are interpreted against the insurer, in favor of finding coverage.  *Econ. Premier Assur. Co.*, 839 N.W.2d at 755.  This serves the goal of protecting the insured, who is usually a "professionally unsophisticated consumer," but this rule applies even to a dispute between an insurer and a "sophisticated

insured with equal bargaining power." *Id.*; *see also Westfield Ins. Co. v. Robinson Outdoors, Inc.*, 700 F.3d 1172 (8th Cir. 2012) (applying Minnesota law). However, courts should resist finding ambiguity where none exists (*Metro Prop. & Cas. Ins. Co. v. Jablonske*, 722 N.W.2d 319, 323 (Minn. Ct. App. 2006) (applying Minnesota law)), as they "have no right to read an ambiguity into the plain language of an insurance contract in order to construe it against the insurer." *Henning Nelson Const. Co. v. Fireman's Fund Am. Life Ins. Co.*, 383 N.W.2d 645, 651 (Minn. 1986). Policies should be construed as a whole, giving unambiguous language its "plain and ordinary" meaning. *Id.* There is a presumption that the parties intended the language used to have effect (*Chergosky v. Crosstown Bell, Inc.*, 463 N.W.2d 522, 526 (Minn. 1990)), and an interpretation rendering any contract term or provision meaningless should be avoided (*Econ. Premier Assur. Co.*, 839 N.W.2d at 755).

Insurance policy exclusions must be given the same consideration as any other part of the contract in determining the scope of coverage. *Thommes v. Milwaukee Ins. Co.*, 641 N.W.2d 877, 880 (Minn. 2002). Courts are required to read policies in favor of finding coverage, construing words of inclusion broadly, but words of exclusion narrowly, and looking past the words used by the parties to the underlying allegations. *Westfield Ins. Co.*, 700 F.3d at 1174 (applying Minnesota law). The language of an exclusion is to be interpreted in accordance with the expectations of the insured. *Thommes*, 641 NW.2d at 880. These expectations, in turn, are to be considered in light of the exclusion's purpose. *Am. Family Mut. Ins. Co. v. Peterson*, 405 N.W.2d 418, 422 (Minn. 1987).

More than sixty years ago, the Minnesota Supreme Court held that it was "too well settled to be questioned" that fire insurance policies are contracts personal to the insurer and insured, and "do not attach to or run with the property insured." *Closuit v. Mitby*, 56 N.W.2d 428, 431-32 (Minn. 1953). The Court explained that while in "common parlance the buildings are insured," everyone "who stops to consider the nature of the insurance contract understands that they are not" and it is known "that the insurance runs to the individual insured, and not with the land" unless there is an assignment or express stipulation of the parties to such an effect. *Closuit v. Mitby*, 56 N.W.2d at 432.

"The purpose of a non-assignment clause is to protect the insurer from an increase to the risk it has agreed to insure." *Gopher Oil Co. v. Am. Hardware Mut. Ins. Co.*, 588 N.W.2d 756, 763 (Minn. Ct. App. 1999). If liability arises before insured property is transferred, the rationale for honoring non-assignment clauses "vanishes" because the insurer's liability arises from its agreement with the insured and not the subsequent owner. *Id.* (internal quotation omitted).

Here, the Policy expressly provides that upon the death of either Strope or Lehti, as the two named insureds on the declarations page, State Farm will insure the legal representative of deceased "only with respect to the premises and property of the deceased covered under [the Policy] at the time of death" and that no assignment of the Policy will be valid unless State Farm gives its written consent. (Policy at 36.) This language creates no ambiguity or reasonable expectation that the dwelling will be covered if Strope no longer owns it upon his death and there is no valid assignment of the Policy.

Minnesota's reasonable expectations doctrine is "extremely narrow and applies only on the few egregious occasions when an exclusion is disguised in a policy's definitions section." *Babinski v. Am. Family Ins. Grp.*, 569 F.3d 349, 353 (8th Cir. 2009) (internal quotation marks omitted).  The doctrine does not apply where an insurance policy is not ambiguous and does not contain a "hidden" exclusion that would lead an insured to have objectively reasonable expectations regarding the terms that would have been negated only through "painstaking study" of the policy provisions.  *Id.* (internal quotation and citations omitted).  It bears repeating that Strope-Robinson is not a party to the contract in question, and from the Policy's unambiguous language, there is no reason to conclude that her uncle did not understand the agreement he entered.

Strope-Robinson also argues that State Farm's position on the Policy is in conflict with the requirement of the Minnesota standard fire policy.  (Am. Compl. ¶ 29.)  The Court disagrees.  Minnesota Statutes Section 65A.01, the state's standard fire insurance policy, was intended to "secure uniformity in fire insurance policies" and enacted to "do away with the evils arising from the insertion in policies of conditions ingeniously worded which restricted the liability of the insurer and gave the insured less protection than he might naturally suppose he was getting under his contract." *Watson v. United Servs. Auto. Ass'n*, 566 N.W.2d 683, 690 (Minn. 1997) (quoting *Heim v. American Alliance Ins. Co. of New York,* 147 Minn. 283, 287, 180 N.W. 225, 226 (1920)).  The statute has a remedial purpose and therefore must be broadly construed.  *Watson v. United Servs. Auto. Ass'n*, 566 N.W. 2d at 690.  The Minnesota Supreme Court has held that when an insurance policy provision is in direct conflict with a statute regulating the

insurance industry, the statute's conformity clause, Minn. Stat. § 65A.01, subd. 1, operates to substitute the statutory provisions for the conflicting provision in the policy. *Id.* Insurance companies may not provide less coverage than the statutory minimum, but they may incorporate additional or different terms into their policies so long as the provisions afford the insured all the rights and benefits of the Minnesota standard fire insurance policy or offer additional benefits that provide greater coverage. *Id.* at 690-91. Strope-Robinson invokes Minn. Stat. § 65A.01 without specifying any provision of the Policy that contravenes the Minnesota standard fire insurance policy. (Am. Compl. ¶ 29; Doc. No. 40 at 16.) The Court has carefully reviewed the state statute and the Policy and can find no provision requiring State Farm to provide coverage for the destruction of the dwelling under the circumstances of this case, and without elaboration or support for the contention from Plaintiffs, will not venture a legal argument to the contrary.[5]

As will be elaborated below, Strope-Robinson held title to the Property at the time of the fire. Strope-Robinson was not party to the contract, either an insured party under the Policy or an assign. According to the plain terms of the Policy, which do not conflict with the state standard fire insurance policy, Strope had no insurable interest in the

---

[5] As a tangential matter, the Court notes that the Estate did receive the benefit of the standard fire insurance policy in that it recovered for Strope's personal belongings in spite of Lehti's act of arson. The Policy includes a provision voiding the contract if an insured causes a loss for the purpose of obtaining insurance benefits. Policy at 31. Under Minnesota law, however, exclusions of coverage for innocent co-insured spouses in cases involving intentional acts of the other insured spouse conflict with the standard fire insurance policy and are therefore invalid. *Watson v. United Servs. Auto. Ass'n*, 566 N.W.2d 683, 691 (Minn. 1997).

Property at the time of the fire, therefore the Estate was no longer entitled to coverage for damage to the Property. Consequently, the Court finds that State Farm is not liable for the fire damage to the Property under the terms of the Policy.

## B. Equitable estoppel

Strope-Robinson, on her own behalf and on behalf of the Estate, claims that State Farm is estopped from denying coverage for the fire damage to the Property because State Farm did not inform them, as Strope's "successors in interest" to the Policy, that the coverage was terminated, refund the premiums for the remainder of the term after the fire, or comply with the Minnesota standard fire insurance policy. (Am. Compl. ¶¶ 27-29.)

Under Minnesota law, estoppel is an equitable doctrine within the discretion of the court to be decided based on the facts of each case. *Evans v. Gov't Emp. Ins. Co.*, 257 N.W.2d 689, 693 (Minn. 1977). The facts must be proven by a fair preponderance of the evidence and "clear, positive and unequivocal in their implications." *Halverson v. Vill. of Deerwood*, 322 N.W.2d 761, 767 (Minn. 1982) (citing *Eliason v. Prod. Credit Ass'n of Aitkin*, 106 N.W.2d 210, 211 (Minn. 1960).

The doctrine of equitable estoppel is intended to prevent a party from taking unconscionable advantage of its own wrongdoing by asserting its strict legal rights. *Plymouth Foam Prod., Inc. v. City of Becker, Minn.*, 120 F.3d 153, 156 (8th Cir. 1997) (applying Minnesota law). Under Minnesota law, equitable estoppel may be asserted where (1) there has been a misrepresentation of material fact, (2) the party to be estopped knew of or should have known that the representation was false, (3) the party to be

estopped intended the representation to be acted upon, (4) the party asserting equitable estoppel lacked the knowledge of the true facts, and (5) the party asserting the estoppel did, in fact, rely upon the misrepresentation to his or her detriment. *Transamerica Ins. Co. v. Int'l Broad. Corp.*, 94 F.3d 1204, 1208–09 (8th Cir. 1996). Prejudice is necessary but not sufficient to establish estoppel—the Minnesota Supreme Court held that "estoppel cannot be used to expand or create insurance coverage where it does not exist." *Cont'l Cas. Co. v. Advance Terrazzo & Tile Co.*, 462 F.3d 1002, 1010 (8th Cir. 2006) (quoting *Shannon v. Great Am. Ins. Co.*, 276 N.W.2d 77, 78 (Minn. 1979)). Estoppel does not apply where it would require enlarging the coverage of an insurance policy, for "it would be wholly improper to impose coverage liability upon an insurer for a risk not specifically undertaken and for which no consideration has been paid." *Id.* Further, it is "generally true that an executory contract in which the personal character of one of the parties is an important element is not assignable without the consent of the parties." *Ocean Acc. & Guarantee Corp. v. Sw. Bell Tel. Co.*, 100 F.2d 441, 444 (8th Cir. 1939.) Given these principles, the Court finds that the Policy does not require coverage for the house under the circumstances presented here.

State Farm made no misrepresentation and took no action to induce the plaintiffs to act under the misapprehension that coverage would extend to property owned by Strope-Robinson. The unambiguous terms of the Policy do not reasonably lend themselves to the understanding that there would be coverage for uninsured parties or for property not owned by Strope, and State Farm did provide coverage for the damaged belongings still owned by the Estate at the time of the arson.

As to the issue of what effect State Farm's failure to refund a portion of the premium for the months when, by their own reasoning, there was nothing to insure because even Strope's personal belongings were a total loss, the Court finds that there is nothing in the record to support Strope-Robinson's position that this created a reasonable reliance on her part. The Policy provides the insured a mechanism by which it can be cancelled upon request and a refund issued but does not obligate State Farm to cancel the policy, even when the subject property no longer has value. The Minnesota standard fire insurance policy likewise only requires an insurance company to issue a pro rata refund for premiums for the expired time of a policy after it is cancelled by either party and then only upon demand. Minn. Stat. § 65A.01 subd. 3. An insurer is generally entitled to retain premiums paid once they are earned, meaning when the insurer assumed the risk set forth in the policy. *Nelson v. Am. Family Mut. Ins. Co.*, 262 F. Supp. 3d 835, 857 (D. Minn. 2017), *aff'd*, 899 F.3d 475 (8th Cir. 2018) (applying Minnesota law). There is nothing in the contract itself or in caselaw to support the proposition that State Farm was required to automatically refund the policy after determining that Strope's property was a total loss, and Strope-Robinson offer no support for the contention.

Taken together, the only element of estoppel proven by a fair preponderance of the evidence is prejudice. Notwithstanding, the Court finds that Strope-Robinson's reliance on her belief that her uncle's insurance would extend to her was detrimental but misguided, and not due to any action on the part of State Farm. State Farm never agreed to assume the risk to provide for coverage of property owned by Strope-Robinson, and as

explained below, the Property transferred to her and was no longer part of the Estate upon Strope's death.

## III.    Minnesota Transfer On Death Deeds

Strope-Robinson contends that despite the instrument executed by her uncle, title to the Property did not transfer to her upon his death.  A review of Minnesota's law concerning TODDs shows that this is not the case.

Chapter 507 of the Minnesota Statutes, entitled "Recording and Filing Conveyances," contains the section which governs TODDs.  Minn. Stat. § 507.071.  The statute sets forth the effect of a TODD, which "transfers the interest to the grantee beneficiary upon the death of the grantor owner," and must "comply with all provisions of Minnesota law applicable to deeds of real property."  Minn. Stat. § 507.071 subd. 2.  Among these provisions is the requirement that the interest transferred is subject to all effective encumbrances to which the interest was subject on the date of the grantor's death, including state or county medical assistance liens.  Minn. Stat. § 507.071 subd. 3.  If such a lien exists on the transferred property, the grantee beneficiary "shall be liable" for the lien for the amount left unpaid after the grantor's estate assets have been applied, up to the full amount of the debt but limited to the value of the interest transferred.  *Id.*  A beneficiary "may apply" to the county in which the property is located for a clearance certificate in order obtain a new certificate of title.  *Id.*, subd. 23.  To comply with subdivision 3 and obtain a clear title unencumbered by a medical assistance lien, a beneficiary must record the clearance certificate in the county where the property is located.  *Id.*, subd. 3.

Strope-Robinson argues that because subdivision 26 of the Minnesota TODD statute provides that "actions to enforce a medical assistance lien or claim against real property described in a [TODD] and any matter raised in connection with enforcement shall be determined in the probate division" of district courts in counties that have one, this means that Strope-Robinson was required "to complete a shortened version of the probate process" before she could "gain the full benefits of ownership." (Am. Compl. ¶ 13; Doc. No. 40 at 6-7, 15.) State Farm argues that this would directly contradict the purpose of Minnesota's TODD statute, which was designed to allow a grantor to remove property from an estate to avoid probate. (Def. Mem. at 2.) The Court finds that caselaw and articles Plaintiffs offer in support of their arguments actually support State Farm's position.

Even if property is transferred upon death by a will rather than a TODD, this does not mean that the heir or devisee does not own the property until probate is complete. Under Minnesota law, title to a decedent's estate vests automatically in the decedent's heirs or devisees at the moment of his or her death. *Laymon v. Minnesota Premier Properties, LLC*, 903 N.W.2d 6, 15 (Minn. Ct. App. 2017), *aff'd*, 913 N.W.2d 449 (Minn. 2018). If estate property enters probate, the personal representative's administrative power does not divest heirs or devisees of their "immediately devolved ownership interest" in the property; while the heirs or devisees hold only encumbered title to the property until the period for administration has ended, they nevertheless have a valid ownership interest in the property from the moment of the decedent's death and may

transfer that interest to another during the period for administration, "albeit subject to the same encumbrance that proceeded the transfer." *Laymon*, 903 N.W.2d at 16.

Minnesota's TODD statute is in keeping with this view of transfer, but deliberately circumvents the probate process. Plaintiffs and State Farm both rely upon the same law review article summarizing the statute enacted in 2008. The author states that the statute's purpose "was to create a new mechanism to transfer property among family members" and that TODDs "are an ideal instrument for individuals with minimal assets to utilize if they want to avoid sending those assets to probate." Keriann L. Riehle, Note, *Todds: A Transfer on Death Dilemma? A Comprehensive Analysis of Minnesota's Transfer on Death Deed Statute-Minn. Stat. S. 507.071*, 9 Wm. Mitchell J.L. & Prac. 1 (2015). The note acknowledges that Minnesota's TODD statute "provides specific provisions" which apply if a state or county held an encumbrance against the property at the time of the grantor owner's death, which allows Minnesota to recoup medical assistance payments and replenish the state's general fund, but cites a weakness in the law in that with a TODD there is no mechanism to force repayment unless the grantee beneficiary decides to sell the property because the property does not transfer through probate. *Id.*

The Court can find nothing in the relevant statutes or caselaw expressly stating that this transfer of deed operates any differently than any other in that a grantor can only transfer property to the extent that he or she owns it, and any valid encumbrances such as liens or mortgages remain in effect and pass along with the deed. However, the Court need not strain to interpret the state law, as the Minnesota Court of Appeals has already

18

done so.  While neither party brought it to the Court's attention, earlier this year, Minnesota's appellate court had occasion to examine and decide the very same Strope TODD at issue here.

In *Kesanen v. Strope-Robinson*, one of Strope's creditors sued Strope-Robinson seeking to void the transfer under the TODD Strope used to grant the Property to his niece.  *Kesanen v. Strope-Robinson*, No. A18-1060, 2019 WL 510800 (Minn. Ct. App. Feb. 11, 2019).  In that case, Kesanen had obtained a judgment against Strope in 2006. *Id.* at *1.  Strope was able to avoid the judgment lien on the Property when he filed for bankruptcy eight years later because the Property was his homestead, but the underlying debt was not discharged.  *Id.*  Kesanen sought a determination that a judgment lien attached to the Property "in some theoretical moment between [Strope's] death and the transfer."  *Id.* at *2.  The district court granted summary judgment in Strope-Robinson's favor, and the Court of Appeals affirmed, finding that "the expiration of both [Strope's] homestead exemption and [Strope's] interest in the [Property] occurred simultaneously upon [Strope's] death; there was no period of time in which [Strope] retained an interest in nonexempt property to which a judgment lien could have attached."  *Id.* at *3.

Based upon the Court of Appeals' decision, which holds that the TODD effectively transferred the Property to Strope-Robinson at the moment of Strope's death, in addition to the clear language of the applicable statute and the Strope TODD itself, the Court concludes that the Property belonged to Strope-Robinson at the time of the fire. The Estate had no insurable interest in the Property, and State Farm had no obligation to Strope-Robinson as an uninsured non-party to the Policy.  Thus, Plaintiffs' claim fails.

## CONCLUSION

The Court recognizes that this outcome may seem unfair and may be the unfortunate result of good intentions paired with incomplete planning. Plaintiffs' counsel argued, not unconvincingly, that the precise time of a grantor's death is difficult if not impossible to predict and the beneficiary of a TODD is likely to be caught unaware and grief-stricken in the period following a grantor's death, making it unreasonable to expect that a grantee will obtain insurance coverage for transferred property. However, when questioned by the Court, State Farm's counsel quite reasonably countered that the advice he would give to a client considering executing a TODD would be to contact his or her insurance provider and try to add their intended grantee as an additional insured to their current policy or to advise the future grantee to obtain their own personal coverage independently. With such options available to individuals planning to use such an instrument, it does not follow that Minnesota's TODD statute is inherently flawed or that the result in this case runs afoul of the legislative intent behind it. The Court finds that because the Estate had no insurable interest in the Property at the time of the fire, and because Strope-Robinson had no agreement for insurance coverage with State Farm, Plaintiffs are not entitled to damages under the Policy. For these reasons, no genuine issue of material fact exists as to Strope-Robinson or the Estate's claim for a declaratory judgment, and summary judgment in favor of State Farm is appropriate.

## ORDER

Based upon the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

20

1.     Defendant State Farm Fire and Casualty Company's Motion for Summary

Judgment (Doc. No. [34]) is **GRANTED**.

2.     Plaintiffs Dawn Strope-Robinson and the Estate of David Clair Strope's

Motion for Summary Judgment (Doc. No. [39]) is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  December 20, 2019                    s/Donovan W. Frank
                                             DONOVAN W. FRANK
                                             United States District Judge